David Kadlec and Gayle Kadlec, Petitioners-
Respondents,

v.

Kevin Kadlec and Carol Kadlec, Respondents-
Appellants.

Court of Appeals

*No. 03–1596. Submitted on briefs February 10, 2004.—Decided
March 23, 2004.*

2004 WI App 84

(Also reported in 679 N.W.2d 914.)

On behalf of the respondents-appellants, the cause was submitted on the briefs of *Bryan S. Seidl* and *Michael J. Stingl* of *Seidl & Stingl, S.C.* of Rhinelander.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Matthew E. Yde* and *Douglas R. Ross* of *Strasser & Yde, S.C.* of Wausau.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Kevin and Carol Kadlec appeal the circuit court's confirmation of an arbitration order. The arbitrator ordered them to pay one-half of a $48,000 commission for the sale of property in Iowa they owned jointly with David and Gayle Kadlec. Kevin and Carol argue the order should be vacated because (1) it went beyond the terms of the arbitration agreement or (2) it either represents a manifest disregard of the law or violates strong public policy. Because we agree that the order constitutes a violation of strong public policy, we reverse the judgment and remand the matter

for the circuit court to vacate that part of the arbitration order requiring Kevin and Carol Kadlec to pay one-half of the real estate commission.

## DISCUSSION

¶ 2. David is Kevin's father. They were partners in a number of business ventures, one of which involved constructing a community based residential facility in Iowa. David and Kevin later disagreed as to the facility's construction, and this was one of many reasons that eventually culminated in the partnership's dissolution. Both parties signed an agreement to arbitrate their disputes. A few months before signing the agreement, however, David signed an exclusive listing contract with a Wisconsin real estate broker, Art Senicka, to sell the Iowa property. The listing contract required a 4% commission to be paid.

¶ 3. At arbitration, David and Kevin's assets and liabilities were split. As part of the division, the arbitrator ordered the Iowa property to be sold to a buyer Senicka secured, who happened to be Senicka's niece, for $1.2 million. The arbitration award was then confirmed by the circuit court.

¶ 4. David and Kevin eventually complied with the order. David paid one-half of Senicka's commission, $24,000, but Kevin refused to pay the other half. Senicka then filed suit against both David and Kevin. David petitioned the arbitrator to issue a supplemental decision requiring Kevin to pay for the one-half commission that was owing, and the arbitrator ultimately issued an order to that effect. The circuit court confirmed that award, and Kevin appeals.

**DISCUSSION**

██

¶ 5. Kevin and Carol first argue the arbitrator exceeded the scope of his authority when he rendered the second arbitration award, which ordered them to pay one-half of the real estate broker's commission. They argue the commission issue was not presented for arbitration by the parties' arbitration agreement. We disagree.

¶ 6. "An arbitrator obtains authority only from the contract of the parties and therefore is confined to the interpretation of that contract and cannot ignore that contract when making an award." *Lukowski v. Dankert*, 184 Wis. 2d 142, 152, 515 N.W.2d 883 (1994). We review an arbitration "to insure that the parties received the arbitration they bargained for." *Lane v. Williams*, 2000 WI App 263, ¶ 6, 240 Wis. 2d 255, 621 N.W.2d 922.

¶ 7. We conclude the arbitrator did not exceed his contractual authority. The arbitration agreement's scope was broad. The parties agreed to "resolve all disputes between David and Kevin Kadlec." The issue regarding the payment of the commission arose as a consequence of the resolution of a dispute in the initial arbitration, specifically the arbitrator's initial order requiring the Iowa property to be sold to the real estate broker's niece, Laura Selby. While both parties eventually complied with the order to sell the property, they later differed as to whose responsibility it was to pay the commission. Thus, we conclude the commission dispute was within the scope of the arbitration agreement and, therefore, the arbitrator had authority to resolve it.

¶ 8. Kevin and Carol next argue the circuit court should not have confirmed the arbitrator's order concerning payment of a commission to a Wisconsin real estate broker for selling Iowa property. Generally, parties to an arbitration agreement "bargain for the judgment of the arbitrator—correct or incorrect—whether that judgment is one of fact or law." *Nicolet High School Dist. v. Nicolet Educ. Ass'n*, 118 Wis. 2d 707, 713, 348 N.W.2d 175 (1984). However, "The rule that a court will not overturn an arbitration panel for 'mere errors of judgment as to law or fact' does not mean that all errors will be tolerated." *Lukowski*, 184 Wis. 2d at 151. An arbitrator's award will be vacated if any of the criteria in WIS. STAT. § 788.10(1) is established,[1] or if the award is illegal, represents a manifest disregard of the law, or

---

[1] WISCONSIN STAT. § 788.10(1) states:

In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

(a) Where the award was produced by corruption, fraud or undue means;

(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

violates strong public policy. *See id.* at 151–52. Arbitration awards are presumptively valid and "will be disturbed only where invalidity is shown by clear and convincing evidence." *Oshkosh v. Union Local 769-A,* 99 Wis. 2d 95, 102–03, 299 N.W.2d 219 (1980). We conclude the arbitrator's award ordering Kevin and Carol to pay one-half of the commission violates strong public policy.

¶ 9. Both Wisconsin and Iowa have statutes that relate to collecting commissions for real estate services. WIS. STAT. § 452.20; IOWA CODE § 43B.30. Both statutes require the real estate broker to prove the broker was licensed in the particular state where the services were rendered. WISCONSIN STAT. § 452.20 provides:

> *No person engaged in the business or acting in the capacity of a broker, salesperson or time-share salesperson within this state* may bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter *without alleging and proving that he or she was a duly licensed broker, salesperson or registered time-share salesperson at the time the alleged cause of action arose.* (Emphasis added.)

Iowa has a nearly identical statute. IOWA CODE § 543B.30 states:

> *A person engaged in the business or acting in the capacity of a real estate broker or a real estate salesperson within this state* shall not bring or maintain any action in the courts of this state for the collection of compensation for services performed as a real estate broker or salesperson *without alleging and proving that the person was a duly licensed real estate broker or real estate salesperson at the time the alleged cause of action arose.* (Emphasis added.)

██

¶ 10. Wisconsin and Iowa prohibit unlicensed persons from providing real estate brokerage services. WISCONSIN STAT. § 452.03 provides:

> *No person may engage in or follow the business or occupation of, or advertise or hold himself or herself out as, or act temporarily or otherwise as a broker or salesperson without a license.* Licenses shall be granted only to persons who are competent to transact such businesses in a manner which safeguards the interests of the public, and only after satisfactory proof of the person's competence has been presented to the department. (Emphasis added.)

In *Badger III Limited Partnership v. Howard, Needles, Tammen & Bergendoff*, 196 Wis. 2d 891, 903, 539 N.W.2d 904 (Ct. App. 1995), we held that § 452.03 "prohibits any person not licensed as a real estate broker in Wisconsin from performing real estate brokerage services in this state." The corollary of this rule is that § 452.03 only allows a person licensed as a real estate broker in Wisconsin to perform real estate brokerage services in this state. In other words, a Wisconsin real estate broker's license is not authorization to render services in other states.

¶ 11. Similarly, Iowa has the same prohibition Wisconsin does regarding rendering real estate brokerage services without a license. IOWA CODE § 543B.1 states:

> *A person shall not, directly or indirectly, with the intention or upon the promise of receiving any valuable consideration, offer, attempt, agree to perform, or perform any single act as a real estate broker* whether as a part of a transaction or as an entire transaction, or represent oneself as a real estate broker, broker asso-

ciate, or salesperson, *without first obtaining a license and otherwise complying with the requirements of this chapter.* (Emphasis added.)

Additionally, IOWA ADMIN CODE § 193E—5.1(3) states: "A person shall not perform any activities in Iowa as provided by Iowa Code chapter 543B without qualifying for and being issued a real estate license."

¶ 12. The policy supporting the licensure requirement in Wisconsin is based on ensuring competency. WISCONSIN ADMIN. CODE § RL 24.03(2) reads in relevant part:

> (a) Licensees shall not provide services which the licensee is not competent to provide unless the licensee engages the assistance of one who is competent. Any person engaged to provide such assistance shall be identified and that person's contribution shall be described.
>
> . . . .
>
> (c) Licensees shall be knowledgeable regarding laws, public policies and current market conditions on real estate matters and assist, guide and advise the buying or selling public based upon these factors.

Similarly, Iowa's policy for requiring licensure in its state is grounded in similar considerations. *See, e.g.,* IOWA CODE § 543B.15 (qualifications for licensee); IOWA ADMIN. CODE § 193E—3.1 (general requirements for brokerage license); IOWA ADMIN. CODE § 193E—3.4 (continuing education requirements for brokers).

¶ 13. In light of Wisconsin's and Iowa's licensure requirements, we conclude there is a strong public policy that requires the arbitrator's award ordering Kevin and Carol to pay one-half of Senicka's commis-

sion to be reversed. Here, it is undisputed Senicka was not a licensed real estate broker in Iowa. Iowa unequivocally requires real estate brokers rendering services in the state to be licensed, and by that license Iowa makes certain the broker is knowledgeable and capable at handling real estate affairs in Iowa. This strong public policy must be respected and, therefore, requires this portion of the arbitrator's award to be vacated.

¶ 14. On a broader plane, individual state's power to regulate its real estate brokers through licensure requirements must be preserved. To conclude otherwise would allow a licensed real estate broker from one state to provide services in another state notwithstanding that other state's requirements. The consequence of that scenario is that all other states' regulations become meaningless. We cannot endorse an arbitrator's award that implicates such a possibility. Thus, we conclude this is a rare case where strong public policy requires the arbitrator's order to be vacated.[2] Therefore, we reverse and remand to the circuit court for the entry of an order vacating the arbitration award requiring Kevin and Carol Kadlec to pay one-half of the real estate commission.

*By the Court.*—Judgment reversed and cause remanded with directions.

[2] Because this conclusion is dispositive of the appeal, we do not consider Kevin and Carol's other argument that the arbitrator did not have authority to impose prejudgment interest. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938).